# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

ANTONIO JOHNSON,

    *Defendant.*

No. 3:18-cr-00162 (MPS)

## RULING ON MOTION FOR COMPASSIONATE RELEASE

Defendant Antonio Johnson, who is serving a sentence of imprisonment at Williamsburg Federal Correctional Institution in South Carolina, has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment and immediate release from custody due to the dangers posed by the COVID-19 virus.  ECF No. 515.  The Government filed a memorandum expressing some concern regarding Johnson's request, but deferring to the Court's judgment on how to resolve the motion.  ECF No. 522.  In response to my order (ECF No. 544), Johnson filed: (1) a short reply, ECF No. 565; (2) copies of his requests for, and denial of, compassionate release made to the Warden or his delegates at FCI Williamsburg, ECF No. 565-1, 565-2; and (3) his disciplinary records from the Bureau of Prisons, ECF No. 567, 567-1.  In addition, Johnson filed a letter from him to the Court, ECF No. 565-3, and a letter to the Court from Tony Nelson, Johnson's father, ECF No. 565-5, as well as Mr. Nelson's biography, ECF No. 565-4.  For the reasons that follow, Johnson's motion is granted.

On August 2, 2018, a grand jury returned an indictment against Johnson and fifteen co-conspirators, charging Johnson in Count One with conspiracy to distribute heroin, fentanyl, cocaine base, and cocaine. ECF No. 25.  On May 10, 2019, Johnson pled guilty to Count One of

the indictment, charging him with conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin, 40 grams or more of fentanyl, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  ECF No. 189.  As a part of his plea agreement with the Government, the parties agreed that Johnson's relevant and readily foreseeable conduct involved approximately 225 grams of heroin, 300 grams of fentanyl, and 5 grams of cocaine base. *Id.*  On October 23, 2019, I sentenced the defendant to 78 months of imprisonment and four years of supervised release.  ECF No. 363.  In doing so, I made a downward departure under *United States v. Fernandez*, 877 F.2d 1132 (2d Cir. 1989), and a modest downward variance to take account of the defendant's successful participation in multiple programs at Wyatt.  ECF No. 356 at 4.  Johnson has been in federal custody since his arrest on July 19, 2018.  ECF No. 515 at 1. His projected date of release is February 1, 2024.[1]  Johnson has served just over 24 months of his 78-month sentence.

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  Because the Sentencing Commission has not updated its policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, to take account of the defendant's statutory right to file a motion with the Court after exhausting remedies,[2] I have

---

[1] Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited July 30, 2020).
[2] This right was established by the First Step Act, Pub. L. No.115-391, enacted in 2018; prior to that, only the Director of the BOP could file a motion under Section 3582(c)(1)(A).

previously found that the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete, and thus that the statutory language requiring that the sentence reduction be "consistent with *applicable* policy statements by the Sentencing Commission" is not currently operative. *See United States v. Harding*, 2020 WL 2988955, at *1 (D. Conn. June 4, 2020) (emphasis added); *see also United States v. Rodriguez*, 2020 WL 1627331, at *4 (E.D. Pa. April 1, 2020).

Therefore, I may reduce Johnson's term of imprisonment if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

Johnson has met the exhaustion requirement because the Warden denied his request, submitted on May 19, 2020. ECF No. 565-1 at 1, 565-2 at 1. Although it is a close call, I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons" warrant a reduction of his term of imprisonment.

Other courts in this Circuit have held that a defendant's pre-existing health conditions, including obesity and heart conditions, combined with the increased risks of COVID-19 in prisons, constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Handy*, No. 3:10cr128(RNC), 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (finding "extraordinary and compelling reasons" in light of defendant's heart condition, hypertension and obesity); *United States v. Delgado*, No. 3:18cr17(VAB), 2020 WL 2464685, at *6 (D. Conn. Apr. 30, 2020) (same, where "Mr. Delgado has demonstrated that his obesity and sleep apnea place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated.").

Mr. Johnson is 43 years old.   ECF No. 517 at 1.  He is 75 inches tall and weighs 285 pounds, *id.* at 1, 10, resulting in a Body Mass Index ("BMI") of 35.6 and placing him in the "obese" category.[3]  According to the Centers for Disease Control and Prevention ("CDC"), "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19."[4]  Obesity, defined as a BMI of 30 or greater, is one of these underlying medical conditions.  *Id.*  Thus, with respect to Johnson's weight, he is at increased risk for severe illness from COVID-19 under the CDC guidelines because his BMI is over 30.

Mr. Johnson also suffers from hypertension. ECF No. 517 at 2.  Under the CDC guidelines, persons diagnosed with hypertension might be at an increased risk for severe illness from COVID-19.[5]  Thus, Mr. Johnson may face an increased risk for severe illness from COVID-19 because of his high blood pressure.

Mr. Johnson is also pre-diabetic.  ECF No. 517 at 24.  Under the CDC guidelines, type 2 diabetes does, and type 1 diabetes may, increase a person's risk of severe illness from COVID-19.[6]  Because Mr. Johnson has not been diagnosed with diabetes, and his medical records do not demonstrate that he experiences complications from being pre-diabetic, this factor does not by itself appear to increase his medical vulnerability to COVID-19.

In addition, Mr. Johnson is considered a "chronic care 2" inmate by the Bureau of Prisons ("BOP"), ECF No. 567 at 1 (designating Johnson as needing an elevated level of care), has been taking medication for various neuropathies, ECF No. 517 at 8, 11, 24, 26, and has recently reported

---

[3] Centers for Disease Control and Prevention, *Adult BMI Calculator*,
https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited July 31, 2020).
[4] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 31, 2020).
[5] *Id.*
[6] *Id.*

chest pains that have not yet been diagnosed, ECF No. 517 at 4, 5.  He has an extensive medical record that generally indicates his poor health.  *See* ECF No. 517.  Although these additional factors do not by themselves qualify him as medically vulnerable under the CDC guidelines, Johnson's overall poor health leads me to place more weight on those factors discussed above that *do* qualify him as susceptible to COVID-19.

Overall, when Mr. Johnson's BMI, hypertension, and status as a chronic care 2 inmate are taken into consideration, he is clearly medically vulnerable and faces an increased risk of severe illness from COVID-19 under the CDC guidelines.

Of course, the inquiry does not end here.  Under Section 3582(c)(1)(A), I must also consider the factors in 18 U.S.C. § 3553(a).  For Mr. Johnson, the Section 3553(a) factors weigh against the requested reduction in the term of imprisonment, but they do not weigh heavily enough to overcome the extraordinary and compelling circumstances presented by the serious risk to Mr. Johnson's safety presented by the COVID-19 virus in the prison setting.[7]  As detailed in the Government's memorandum, Mr. Johnson committed a serious crime in this case, especially because of the significant quantity of fentanyl involved.  He was a member of a large-scale drug-trafficking organization that was selling significant quantities of fentanyl and heroin for profit— both highly addictive and dangerous opioids.  ECF No. 522 at 5.  Mr. Johnson obtained wholesale quantities and resold the drugs to his own customers.  *Id.*  But Mr. Johnson was not the leader,

---

[7] Of course, the Section 3553(a) factors will almost invariably weigh against the requested reduction, especially for a defendant who has yet to serve most of his or her sentence.  That is so because the sentence is the product of the Court's weighing of the Section 3553(a) factors at sentencing; thus, unless the Court finds that it made an error at sentencing, weighing the Section 3553(a) factors when the Section 3582 motion is filed will almost always point to more prison time.  Because Section 3582 obviously contemplates the possibility that, in spite of the Section 3553(a) factors, there will still be "extraordinary and compelling" cases warranting a reduction in the term of imprisonment, the analysis of the Section 3553(a) factors in the context of a Section 3582 motion must train on how heavily those factors weigh against release and, in particular, whether their weight overcomes whatever extraordinary and compelling circumstances there are that lean in favor of release.

manager, or supervisor of this organization, and his offense did not involve violence or guns.[8] The Government also points to Johnson's criminal history as a cause for concern.  *Id.* at 6.  Indeed, Johnson has a troubling number of prior convictions.  But, as the Government acknowledges, Johnson has demonstrated a dramatic decline in his rate of recidivism with 17 convictions between the ages of 17-21, 10 convictions between the ages of 24-26, and only one other conviction for possession of marijuana at the age of 34.  *Id.* at 7.  Further, Johnson's prior convictions did not involve violence.  *Id.*

Mr. Johnson is now 43 years old and appears to be ageing out of his prior criminal behavior. Over the past two years, he participated in several rehabilitative programs during his time at Wyatt and has not had any disciplinary incidents at Wyatt or in BOP custody.  ECF No. 363; ECF No. 567 at 1, 3; ECF No. 567-1 at 1.  I also find that Johnson's network of support, including the commitment of his father, as expressed in an email to Johnson's defense attorney (ECF No. 565-5) strengthens his chances to reenter society successfully and abide by the conditions of release I impose in this order.  ECF No. 565.  In balancing the Section 3553(a) factors here, I find that the risk to Mr. Johnson's health and his recent positive behavioral trend outweigh the 3553(a) factors and, despite those factors, make his case for a reduction in his term of imprisonment extraordinary and compelling.

Because Mr. Johnson's offense of conviction is a serious drug offense, I add a few words to explain why I have reached a different conclusion regarding a COVID-19-inspired reduction in his term of imprisonment than in the case of two other serious drug offenders whose Section 3582 motions I recently denied—Rashaud Jones and Charles Tyson.  *See United States v. Jones*,

---

[8] On this point, the Government's investigation did reveal communications in which Johnson discussed activities involving illegal firearms, though even these incidents do not suggest that Johnson himself used illegal firearms. ECF No. 522 at 5-6.

No. 3:13-CR-00002 (MPS), 2020 WL 3451820, at *1 (D. Conn. June 24, 2020); *United States v. Tyson*, No. 3:13-CR-002 (MPS), 2020 WL 3451694, at *1 (D. Conn. June 24, 2020). Jones was a major drug dealer, leading a substantial organization that injected large quantities of illegal drugs into the Hartford community, after committing repeated drug crimes of increased severity during his 20s. *Jones*, 2020 WL 3451820, at *3. The seriousness of Jones' drug operation was compounded by the substantial cache of guns and ammunition found in his car. *Id.* By contrast, Johnson was not a leader, organizer, or manager of the drug-trafficking organization in which he participated and did not exhibit the kind of leadership skills, sophistication, and potential for violence of Jones (as reflected in Jones's possession of the cache of guns and ammunition.). Further, Johnson's trajectory over the past decade or so has suggested that he is "ageing out" of the criminal lifestyle, while Jones has, during the same time frame, ratcheted up his criminal conduct, committing offenses of increasing seriousness.

Johnson's case is also different from that of Charles Tyson. Tyson has a long criminal record that includes violence, and while on supervised release, Tyson led police on a long and dangerous car chase in New Haven. *Tyson*, 2020 WL 3451694, at *3. On another occasion, Tyson was seen brandishing a gun. *Id.* Now in his early 40s, Tyson continues to receive disciplinary tickets in prison and has not demonstrated any signs of "ageing out" of his criminal activity. *Id.* Although Johnson also has a substantial criminal record, it is, on the whole, much more dated than Tyson's and lacks the violent features present in Tyson's. Unlike Tyson, Johnson's discipline-free time in BOP custody provides real evidence that he is committed to improving his behavior.

Mr. Johnson has demonstrated that he is medically vulnerable. Further, even when the Section 3553(a) factors are accounted for in this case, the risk to Johnson's health and safety

posed by his overall poor health, susceptibility to the virus, and COVID-19's recent appearance at FCI Williamsburg[9] present "extraordinary and compelling reasons" that warrant granting his motion to reduce his term of imprisonment now.  Therefore, Johnson's motion for compassionate release, ECF No. 515, is hereby **GRANTED**.  **Accordingly, I hereby order that Antonio Johnson (Register Number: 15259-014) be released from BOP custody on the morning of Thursday, August 6, 2020.**  Mr. Johnson shall serve a period of supervised release equal to the unserved portion of his original term of imprisonment, plus the four-year term of supervised release previously imposed.  Mr. Johnson was scheduled to become eligible for release from prison on February 1, 2024.  Therefore, he shall be on supervised release until that date, followed by an additional four years of supervised release (which was the originally imposed term).  All of the conditions of supervised release listed in his original Judgment, ECF No. 363, shall apply throughout the period of supervised release.   In addition, the following additional special conditions shall apply:

**Upon release on August 6, 2020, Mr. Johnson shall travel as soon as possible and in no more than 24 hours to his address in Connecticut.  There, he shall be in home confinement for sixty (60) days, to be enforced by electronic monitoring.  During the first fourteen (14) of those 60 days, he must self-quarantine, i.e., self-isolate at home by living, by himself, in a separate room of the house or apartment building.**  (The self-quarantine order within the home is for the protection of his family members.)  Following that fourteen-day period, he shall remain in **home confinement for an additional forty-six (46) days.**  During the first fourteen days of his period of home confinement, he shall remain inside the home at all times,

---

[9] As of August 3, 2020, the BOP reported one inmate and four staff with positive COVID-19 tests at FCI Williamsburg.  As of the same date, there have been no reported recoveries or deaths.  Federal Bureau of Prisons, *COVID-19 Coronavirus* https://www.bop.gov/coronavirus/ (last visited August 3, 2020).

except for medical reasons, which medical reasons must be communicated to the U.S. Probation Office, if at all possible, before he attempts to leave the home. After the 14 days of self-quarantine have expired, he shall remain inside the home at all times during the remaining 46 days of home confinement, except for medical reasons, searching for employment (i.e., actual job interviews), or maintaining employment; in each case, he must communicate with the Probation Officer before leaving the home, except in the case that a documented medical emergency prevents him from doing so. The home confinement condition will be enforced by radio frequency electronic monitoring.

As soon as possible after the fourteen-day period of quarantine, he shall also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons, providing a copy of such communication to the assigned Probation Officer.

Defense counsel shall transmit a copy of this order to appropriate BOP staff at FCI Williamsburg as soon as possible. The Court will hold a telephonic status conference to review Mr. Johnson's compliance with his conditions of release on August 28, 2020. Mr. Johnson must dial in to the call; the Court will provide the Government and defense counsel with the dial-in information.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            August 3, 2020